## AACHEN & MUNICH FIRE INS. CO. v. GUARANTY TRUST CO. OF NEW YORK.

### No. 248.

Circuit Court of Appeals, Second Circuit.

March 10, 1930.

See, also, 27 F.(2d) 674.

Stetson, Jennings, Russell & Davis, of New York City (William C. Cannon and Ralph M. Carson, both of New York City, of counsel), for appellant.

Hartwell Cabell, of New York City, (James M. Lown and Joseph S. Catalano, both of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above).

The defendant seeks to differentiate the record before us from that on the former appeal because of proof of custom. But the evidence which was admitted by the trial court amounted to no more than saying that banks in selling foreign exchange, require money in advance, or, if a customer is a depositor, insist upon a charge against his account before the expected consummation of the transaction abroad—that is, in issuing foreign exchange, the bank acts in the same way whether cash is paid or the amount is charged against the depositor's account. In other words, banks do not await advices that the credit has been established abroad before obtaining cash or charging their customer's account. There is testimony that, in cases where the credit fails to be established abroad, the bank does not reverse the debit against its customer, but makes a trade with him and buys back the exchange at some mutually agreeable rate.

Questions whether there is a custom to treat the charge as final were asked. But such questions were properly excluded because they called for answers stating, not what the banks did, but what was the legal effect of their action. Moreover no proof was offered of any instance where (as in the present case) a bank learned of the failure to establish a foreign credit before the customer had become aware of it. The instances mentioned were those where the customer first learned of the failure and made some complaint to the bank because the credit which he had purchased had not been set up, and the bank then proceeded to satisfy him in a way appropriate to the particular facts involved. The instances referred to included situations where the payee could not be found or where the cable had been mutilated. An expert from the National City Bank testified that, where confirmation was received from abroad that the payment had not been made, it was the custom to pay the customer by check unless he "specially requests * * * to credit his account, in which case you do so." Fol. 323. Such testimony failed to establish that the relation of depositor and bank was terminated by charging the depositor's account with a payment that was never made.

That banks on various occasions made special adjustments with their depositors instead of simply reversing the charges is no proof that the charge was ipso facto a permanent entry which as a matter of law was finally deductible from the drawing account of the depositor. Of course, it was permissible for any bank to persuade its customer to purchase exchange at a new rate or to adjust errors that might have arisen either from mistakes on the part of the customer in giving the order or mistakes of the bank in carrying it out. Transactions of this kind do not give rise to a fair inference that the direction to charge the plaintiff's account, interpreted in the light of a custom in the business, meant as a matter of fact that the plaintiff agreed to have its status as a depositor finally cease pro tanto upon the making of a mere bookkeeping entry. To affect the status, there must, in the absence of such an agreement, at least have been some act done by the bank, at the request of the customer, which prejudiced the rights of the former. Here the bank parted with no money and did no other thing which altered its position. "There can be no rule of law that the mere bookkeeping entry in itself constitutes payment. We must always look through the form of transactions and business communications to get the exact facts." Sokoloff v. National City Bank, 250 N. Y. 69, 164 N. E. 745, 748.

It is contended that it ought to make no difference whether the customer, in ordering the exchange, paid cash or authorized a debit to his account. In many respects it would make no difference, for in either event, if the exchange was not duly made available, the customer would be entitled to be placed in his original position. But, where he was a depositor, placing him in his original position involves restoring his rights as such depositor. In short, it means that he retains his account with his bank, that no money has ever been withdrawn from the account in spite of the premature debit against it, and that the bank is under no obligation to pay him except as he demands payment. On the other hand, if the customer had paid cash and the bank had failed to perform, the failure would give rise to an immediate obligation to return the money without the necessity of a demand, because, in that situation, there never was any relation between the parties of bank and depositor. Finch v. Parker, 49 N. Y. 1.

In our opinion, the attempted proof of custom did not show that a debit to the plaintiff's account when unaccompanied by any performance on the part of the defendant changed the relation of depositor which the plaintiff held before the book entry was made. The statute of limitations accordingly did not begin to run until after the plaintiff demanded payment of the amount which had been prematurely charged against it (Sokoloff v. National City Bank, 250 N. Y. at page 80, 164 N. E. 745), and could therefore, upon no theory, be a bar to the cause of action asserted.

The judgment is affirmed.